UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00250-TBR

CHARLES STONE,                                                                    PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR,
EMPLOYMENT STANDARDS ADMINISTRATION,
OFFICE OF WORKERS COMPENSATION
PROGRAMS, DIVISION OF ENERGY
EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION,
FINAL ADJUDICATION BRANCH,                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on the briefing of the parties, Plaintiff Charles Stone

("Stone") and Defendant U.S. Department of Labor, Employment Standards Administration,

Office of Workers Compensation Programs, Division of Energy Employees Occupational Illness

Compensation, Final Adjudication Branch (the "DOL"). In this action, Stone seeks this Court's

judicial review of the DOL's decisions denying Stone's claim for benefits under Part B and Part

E of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), 42

U.S.C. §§ 7384–7385s–15. The Court has reviewed the parties' briefing, the Administrative

Record ("AR"), and the applicable law, and finds that the DOL's denial of Stone's claims should

be set aside and this matter should be remanded to the DOL for a consideration of whether, based

on various omitted medical records, Stone's claims for EEOICPA benefits may succeed.

## BACKGROUND

### A.  Statutory and Regulatory Background

The EEOICPA establishes a federal compensation program intended to provide monetary

"benefits to individuals who have illnesses that were caused by exposure to radiation or

beryllium in the course of their work for the Department of Energy ("DOE")." *Freeman v. United States Dep't of Labor*, 653 F. App'x 405, 407 (6th Cir. 2016) (citing 42 U.S.C. § 7384). Employees eligible under Part B of the Act "can receive a lump-sum payment of $150,000 (and coverage of medical expenses) for covered beryllium illnesses, specified cancers, and other specified illnesses," including Chronic Beryllium Disease ("CBD"), which Stone claims in this case. *Id.* (citing 42 U.S.C. § 7384n–s; § 7384*l*). "Part E of the EEOICPA provides additional compensation to certain DOE contractor employees for permanent impairment and/or wage-loss due to a 'covered' illness resulting from work-related exposure to toxic substances at a DOE facility." *Lahndorff v. U.S. Dep't of Labor*, No. 5:15-CV-00022-GNS-LLK, 2017 WL 4445984, at *1 (W.D. Ky. Oct. 5, 2017) (citing 42 U.S.C. § 7385s(2)). "

In order to establish entitlement to benefits under Part B for CBD, a claimant must first demonstrate that he is "a covered beryllium employee," meaning that the claimant may have been exposed to beryllium while employed at a covered facility. 20 C.F.R. § 30.205. "When documentation establishes employment at a DOE facility 'during a period of time when beryllium dust, particles, or vapor may have been present,' an employee's exposure to beryllium is presumed in the absence of substantial evidence to the contrary." *Freeman*, 653 F. App'x at 407 (citing 42 U.S.C. § 7384n). If the claimant establishes that he is a covered beryllium employee under Part B, he must next show that he was diagnosed with CBD. 42 U.S.C. § 7384*l*(13). Timing becomes relevant here; "[t]hose who were allegedly diagnosed with CBD before January 1, 1993 must satisfy different criteria than those were allegedly diagnosed after that date." *Freeman*, 653 F. App'x at 407. Here, the parties agree that the pre-1993 criteria apply to Stone's claim.

**(B)** For diagnoses before January 1, 1993, [a claimant must prove] the presence of--

**(i)** occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
**(ii)** any three of the following criteria:
> **(I)** Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
> **(II)** Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
> **(III)** Lung pathology consistent with chronic beryllium disease.
> **(IV)** Clinical course consistent with a chronic respiratory disorder.
> **(V)** Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C. § 7384l(13)(B).

Under Part E of the EEOICPA, the "DOL must find that a DOE contactor employee has a covered illness . . . if it has already determined that the employee is entitled to compensation under Part B for the same illness," such as CBD. *Lahndorff*, 2017 WL 4445984, at *1 (citing 42 U.S.C. § 7385s–4(a)). If the employee does not bring a claim under Part B or the DOL does not find that the employee is entitled to benefits under Part B, the employee can still succeed on a Part E claim if he establishes that:

> **(A)** it is at least as likely as not that exposure to a toxic substance at a Department of Energy facility was a significant factor in aggravating, contributing to, or causing the illness; and

> **(B)** it is at least as likely as not that the exposure to such toxic substance was related to employment at a Department of Energy facility.

42 U.S.C.A. § 7385s-4(c)(1).

## B. Stone's Claim for Benefits Under the EEOICPA

Stone was employed at the Paducah Gaseous Diffusion Plant, which is a covered DOE facility, from February 2, 1970 to March 31, 1992. [AR at 77, 329.] Stone filed his instant claim for Part B and Part E EEOICPA benefits on August 1, 2014, claiming that he developed CBD while employed at the Plant. [AR at 356.] Although the Final Adjudication Branch (FAB) initially denied Stone's claim on June 29, 2015 and denied Stone's request for reconsideration on

October 21, 2015, the Division of Energy Employees Occupational Illness Compensation

("DEEOIC") Director vacated those decisions on February 11, 2016 through a Director's Order.

[*Id.*] The Director's Order

> instructed the district office to prepare a statement of accepted facts that focused
> on the remaining issues that needed to be addressed in [Stone's] Part B claim, and
> to request a medical opinion from a new Contract Medical Consultant (CMC) that
> answered the question of whether [Stone's] medical records prior to 1993
> established a clinical course consistent with a chronic respiratory disorder
> (Criterion IV).

[*Id.*] Because Criteria I and II were already established by the evidence in the file, the Director's

Order did not instruct the CMC to analyze whether those Criteria were established. [*Id.*] On

remand, the district office referred Stone's case to a CMC, Dr. Robert Hoffman, MD, for

analysis of whether Stone met Criterion IV, a clinical course consistent with a chronic

respiratory disorder. [*See* AR at 362.] In his Case File Review Report dated April 1, 2016, Dr.

Hoffman stated that, "in [his] opinion, the medical records prior to 1993 do <u>not</u> establish a

clinical course consistent with a chronic respiratory disorder." [*Id.* at 364.] In detail, Dr.

Hoffman explained the following:

> The criteria for determining exactly what constitutes a "chronic respiratory
> disorder" in the DEEOICP Manual are rather vague . . . However, it is stated in
> the Manual that "evidence of a chronic respiratory disorder includes records
> communicating existence of a long term, prolonged pulmonary disease process.
> References to acute pulmonary conditions, such as short-term pulmonary distress
> associated with temporary viral or bacterial infection do not qualify as a chronic
> respiratory disorder.
>
> Mr. Stone did have a solitary episode of pneumonia in 1972, but this was an acute
> problem from which he fully recovered. Even Mr. Stone's thoracotomy had
> nothing to do with any chronic respiratory disorder. It was performed because a
> routine chest x-ray showed a new lung nodule. He was entirely asymptomatic at
> the time. A localized fungal infection (blastomycosis) was found to be the cause
> of the nodule. It was totally resected and he required no further treatment and
> never had any additional symptoms.

[*Id.*]

Thereafter, however, on April 19, 2016, Stone's authorized representative submitted additional documents, including medical records spanning from 1984 to 1992, in support of Criterion IV. [AR at 357; DN 20 at 8.] Therefore, Stone's Claims Examiner, Kathryn McTintyre of the DEEOIC Jacksonville District Office, prepared another "Service Request Form" for Dr. Hoffman dated May 3, 2016. [AR at 514.] Therein, she requested "a second review of the medical [evidence] . . . to ensure that all medical evidence submitted in support of pre-1993 CBD is being considered." [*Id.*]

In its brief, the DOL states that the additional medical records Stone submitted in April 2016 are located in the Administrative Record at pages 514 to 547 and pages 565 to 578. [DN 20 at 8.] These pages contain, in pertinent part, several "dispensary records" from the Paducah Gaseous Diffusion Plant during the time Stone worked there. Among the dates of the dispensary records on which Stone relies are September 14, 1984, December 7, 1984, December 12, 1984, December 14, 1984, December 18, 1984, August 4, 1986, November 14, 1986, November 25, 1986, March 2, 1987, September 11, 1989, November 29, 1989, March 8, 1991, November 21, 1991, December 17, 1991, and March 8, 1992. [AR at 530–31, 533–34, 536–540.][1] Several of these dispensary records mention symptoms associated with upper respiratory infections (URIs) and other respiratory issues such as wheezing, shortness of breath ("SOB"), non-productive coughing, productive coughing, and yellow sputum. [*See id.*]

Dr. Hoffman submitted his Supplemental File Review dated May 5, 2016, just two days after the DEEOIC submitted its second service request form to him on May 3, 2016, which included 138 pages of medical records. [AR at 345, 514; DN 20 at 8.] In his second report, Dr. Hoffman explained:

---

[1] Though Stone also asserts that dispensary records were submitted from September 12, 1984, February 8, 1985, and November 28, 1987, the Court could not locate those particular records in the pages Stone or the DOL cited.

[s]ince my initial report dated 4/1/16, additional records have been received regarding Mr. Stone. In particular, there were several periodic health evaluations that were performed during his employment at the Paducah Gaseous Diffusion Plant (PGDP) as a laborer and painter from 2/2/70 to 3/31/92. These reports were dated 3/13/81, 9/22/82, 2/17/84, 8/15/85, 3/13/87, 9/30/88 and 5/29/90 and made no mention of any respiratory problems.

[AR at 345.] Dr. Hoffman then concluded that "[t]he new records received regarding Mr. Stone do not indicate the presence of any ongoing respiratory complaints prior to 1993. Therefore, the medical records prior to 1993 do not establish a clinical course consistent with a chronic respiratory disorder." [*Id.*] Troublingly, however, Dr. Hoffman did not mention having received or reviewed *any* of the dispensary records from the fifteen dates the Court listed above in the previous paragraph, which did mention various respiratory problems. [*See id.*] Rather, Dr. Hoffman cited the dates of seven different "periodic health evaluations" performed on entirely different dates during Stone's employment. [*See id.*]

However, the district office issued a recommended decision on May 25, 2016 denying Stone's claim for EEOICPA benefits. [AR at 356–360.] Therein, the district office specifically relied on both of Dr. Hoffman's reports, including his second report in which he "stat[ed] that the new records received d[id] not indicate the presence of any chronic respiratory complaints prior to 1993" and therefore that Stone's "medical records d[id] not establish" Criterion IV. [*Id.* at 358.] The district office concluded that, because Stone could only satisfy Criterion I and Criterion II, but not a third Criterion as required by the EEOICPA, that his claim for Part B benefits must be denied. [*Id.* at 359.] The district office also found that there was insufficient medical evidence to support Stone's claim under Part E, and likewise denied him benefits under that portion of the Act.

Stone objected to the May 25, 2016 recommended decision and requested an in person hearing, which was held on August 30, 2016. [AR at 335 (Notice of Hearing).] Stone was

advised that he could "submit any additional evidence that [he] wish[ed] [the hearing officer] to consider" prior to the hearing. [*Id.* at 337.] At the hearing, Stone's authorized representative argued that McTintyre, Stone's Claims Examiner, failed to submit to Dr. Hoffman *all* of Stone's supplemental medical records that supported a clinical course of treatment consistent with a chronic respiratory disorder prior to 1993. [AR at 137, 155–56.] Also at the hearing, Stone's authorized representative submitted the overlooked medical records as exhibits and went through each of them with the hearing officer to point out alleged evidence of Stone's respiratory issues. For instance, Stone's authorized representative pointed out that Stone's dispensary records included the following notations:[2]

- September 14, 1984 – "URI resolving" [AR at 159, 530.]

- December 7, 1984 – "URI symptoms – Pt has been taking . . . Coricidin D" and other illegible medicines. [AR at 159–60, 530.]

- December 12, 1984 – "URI and cough, absent 2 days," "on Penicillin regimen. Feels much better lately and ready to RTW." "Add Sudafed . . . Tylenol . . . Robitussin DM." [AR at 160, 530.]

- December 14, 1984 – "non productive coughing. Rhinitis, wheezing, and SOB," "See previous history. Nonproductive course cough . . . Currently on Keflex regimen," "URI." [AR at 162–63, 531.]

- December 18, 1984 – "Pt called stating Dr. Meyer felt his lungs. The chest were unchanged. Was asthmatic bronchitis. Patient was given steroids and hydrocodone." [AR at 164, 531.]

- August 4, 1986 – "URI (mild)," "Tylenol." [AR at 169, 533.]

---

[2] The dispensary records also contain several other illegible notations which the Court cannot fully discern, but that a medical professional may be able to interpret on remand.

- November 14, 1986 – "Allergic Rhinitis/Early URI." [AR at 170, 534.]

- November 25, 1986 – "non productive coughing," "Rx Coricidin D, Cepacol, Robitussin DM" and other illegible medications. [AR at 171, 534.]

- March 2, 1987 – "non productive coughing," "Rx Coricidin D, Cepacol, Robitussin DM," "also complained of pain around thoracic area." [AR at 171, 534.]

- September 11, 1989 – "URI." [AR at 537.]

- November 29, 1989 – "URI symptoms," "Amoxicillin, Sudafed, Robitussin DM." [AR at 172–74, 536.]

- March 8, 1991 – "sinus congestion, sinus drainage, non-productive cough, tenderness around eyes," "Possible URI," "Rx Sudafed, Tylenol, Robitussin DM." [AR at 175–76, 538.]

- November 21, 1991 – "URI symptoms," "Rx Sudafed, Tylenol, Cepacol, Robitussin DM." [AR at 177, 539.]

- December 17, 1991 – "URI symptoms," "Rx Sudafed, Robitussin DM . . ."[AR at 177, 539.]

- March 18, 1992 – "Productive cough, yellow sputum," "Rx Robitussin DM, Tylenol . . ." [AR at 178, 540.]

After taking the hearing officer through all of the above exhibits, Stone pointed out that Dr. Hoffman did not state that he considered *any* of those exhibits in his supplemental file review. Rather, he only stated that he received and reviewed periodic health evaluations "dated 3/13/81, 9/22/82, 2/17/84, 8/15/85, 3/13/87, 9/30/88 and 5/29/90," and further stated that none of those reports "made [any] mention of any respiratory problems." [AR at 178, 345.] The hearing officer stated that he understood Stone's argument: that Dr. Hoffman either did not fully consider

the medical evidence or, for some reason, was not provided with all of the medical evidence before completing his supplemental file review. [AR at 179.] The hearing office concluded, in part, by stating that "the evidence submitted during the hearing, and all of the evidence in the record will be included in the final decision." [AR at 199.]

The Final Adjudication Branch issued its final decision following the hearing on December 9, 2016. [AR at 77.] Therein, the FAB addressed what it characterized as Stone's argument that "the district office intentionally withheld medical documents from the CMC that demonstrate such a clinical course" consistent with a chronic respiratory disorder. [AR at 80.] However, this is a mischaracterization of Stone's argument, as Stone's authorized representative made clear during the hearing that he did not know the reason why certain medical records were not considered and that he was not "accusing anybody of intentionally withholding" records. [AR at 181.]

The FAB went on to acknowledge the exhibits introduced at the hearing consisting of the dispensary records from the approximately fourteen occasions between September 12, 1984 and March 18, 1992 "with various respiratory complaints or symptoms that included upper respiratory infections, a couch, rhinitis, sinus congestion, and bronchitis." [AR at 80.] The FAB found, however, that

> although [Stone's] authorized representative alleges that relevant medical documents were withheld from the CMC, a review of the record shows that the dispensary records he cited in support of this allegation (Exhibits 6 through 16) were in fact provided to the CMC, and are referenced in his reports of April 1, 2016 and May 5, 2016.

[AR at 82.] Therefore, the FAB went on to conclude that there was insufficient evidence "to establish that [Stone] w[as] diagnosed with established chronic beryllium disease" under the pre-1993 standard because "there [wa]s evidence in the record satisfying Criteria I and II . . . [but]

the record [wa]s not sufficient to satisfy any of the remaining three criteria." [AR at 83.] The

FAB denied Stone's claim under both Part B and Part E of the EEOICPA. [AR at 83.] Stone

requested that the FAB's decision be reconsidered, but his request was denied on January 23,

2017, making the FAB's decision final as of that date. [AR at 4.]

Stone then filed his Amended Complaint in this suit on March 13, 2017, seeking judicial

review of the DOL's denial of his claims under Part B and Part E of the EEOICPA.

## JURISDICTION

This Court has jurisdiction to review the DOL's decision to deny benefits under the

EEOICPA, as questions under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-

706, constitute federal questions under 28 U.S.C. § 1331.

## STANDARD OF REVIEW

When statutory provisions are silent as to judicial review procedures, as is Part B of the

EEOICPA, courts review administrative decisions under the APA. 5 U.S.C. § 704. Under the

APA, a "reviewing court shall. . . hold unlawful and set aside agency action, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C.A. § 706(2)(A). "Under this APA standard, the reviewing court

'must consider whether the decision was based on a consideration of the relevant factors and

whether there has been a clear error of judgment.'" *Kentucky Waterways All. v. Johnson*, 540

F.3d 466, 473 (6th Cir. 2008) (quoting *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360,

378 (1989)). The arbitrary and capricious standard is "deferential" and is "the least demanding

review of an administrative action." *Freeman*, 653 F. App'x at 409 (quoting *Nat'l Ass'n of Home*

*Builders v. Defenders of Wildlife,* 551 U.S. 644, 658 (2007) and *Coal. for Gov't Procurement v.*

*Fed. Prison Indus., Inc.*, 365 F.3d 435, 475 (6th Cir. 2004)). "However, the standard does not

require that we "merely ... rubber stamp the [agency's] decision." *Id.* (quoting *Ky. Waterways All*, 540 F.3d at 474). Rather, a reviewing court must find an agency's decision to be arbitrary and capricious when the agency

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Ky. Waterways All*, 540 F.3d at 474 (quoting *Nat'l Ass'n of Home Builders,* 551 U.S. at 127).

Part E of the EEOICPA is not silent as to judicial review procedures, as is Part B, however. With regard to the denial of Part E claims, the EEOICPA provides that "[t]he court may modify or set aside such decision only if the court determines that such decision was arbitrary and capricious." 42 U.S.C.A. § 7385s-6(a). Therefore, a similar (though slightly narrower) judicial review standard applies to Part E claims; courts may only disturb DOL decisions regarding such claims if the DOL's decision was arbitrary and capricious.

DISCUSSION

**A. Stone's Claim for Part B Benefits**

Both Stone and the DOL agree that Stone qualifies as a covered beryllium employee, the first requirement under Part B of the EEOICPA. The only issue, then, is whether Stone can demonstrate that he was diagnosed with CBD, the next requirement for a successful Part B claim. *See* 42 U.S.C. § 7384*l*(13). As the Court explained above, to prove this under the pre-1993 framework, Stone must prove the presence of three out of the five criteria enumerated in 42 U.S.C. §7384l(13)(B)(ii). Both parties agree that Stone satisfies Criterion I, "Characteristic chest radiographic (or computed tomography (CT)) abnormalities," and Criterion II, "Restrictive or obstructive lung physiology testing or diffusing lung capacity defect." [DN 20 at 6, 15; AR 82.] However, the parties disagree as to whether Stone meets Criterion IV, a "Clinical course

consistent with a chronic respiratory disorder." [DN 18 at 14–17; AR 82.] In its final decision

below, the DOL held that Stone's medical records did not support a finding that Criterion IV was

satisfied, and therefore concluded that Stone was not entitled to benefits under Part B or Part E.

[AR at 77–84.]

In his opening brief, however, Stone argues that the DOL's decision was arbitrary and

capricious because it failed to adequately consider Stone's medical records from the dispensary

at the Paducah Gaseous Diffusion Plant, which document an array of respiratory issues that

Stone complained of prior to 1993. [*See* DN 18 at 7.] The Court outlined these records in detail

above. They include, for example, notations of URI symptoms, a non-productive cough, a

productive cough, shortness of breath, wheezing, sinus congestion and drainage, and bronchitis.

They also document various medications Stone was instructed to take, such as Keflex,

Amoxicillin, Coricidin D, Tylenol, Sudafed, Robitussin DM, steroids, Hydrocodone, Penicillin,

and Cepacol. [AR at 159–78, 530–40.] These dispensary records are dated September 14, 1984,

December 7, 1984, December 12, 1984, December 14, 1984, December 18, 1984, August 4,

1986, November 14, 1986, November 25, 1986, March 2, 1987, September 11, 1989, November

29, 1989, March 8, 1991, November 21, 1991, December 17, 1991, and March 18, 1992. [AR at

530–40.]

Contrary to the FAB's conclusion that the dispensary records from these dates "were in

fact provided to [Dr. Hoffman], and are referenced in his reports of April 1, 2016 and May 5,

2016," [AR at 82], there is no evidence that Dr. Hoffman ever considered these particular

records. In his April 1, 2016 report, before Stone even submitted these supplemental records, Dr.

Hoffman stated that he reviewed a medical record from January 10, 1972 which stated that Stone

had been treated for bronchial pneumonia and one from November 1982 which documented the

removal of a lesion and plural plaques. [AR at 362.] Aside from those two records, Dr. Hoffman wrote that "[a]dditional notes did not document any chronic respiratory issues." [AR at 262.]

In his Supplemental File Review dated May 5, 2016, after Stone had submitted his supplemental medical records, Dr. Hoffman noted that the only additional reports he received to review were dated "3/13/81, 9/22/82, 2/17/84, 8/15/85, 3/13/87, 9/30/88, and 5/29/90 and made no mention of any respiratory problems." [AR 345.] Based on that statement, Dr. Hoffman concluded that "[t]he new records received regarding Mr. Stone do not indicate the presence of any ongoing respiratory complaints prior to 1993. Therefore, the medical records prior to 1993 do not establish a clinical course consistent with a chronic respiratory disorder." [AR at 345.] However, the dates Dr. Hoffman mentioned do not match *any* of the dates of the above supplemental dispensary records Stone submitted and which were specifically discussed at the hearing. Accordingly, it appears that Dr. Hoffman did not consider any of the additional dispensary records Stone submitted, several of which reference respiratory issues.

In its response brief, the DOL simply references the excerpt from the December 9, 2016 FAB final decision which concluded that Dr. Hoffman did receive the dispensary records that were introduced as exhibits at Stone's hearing and that Dr. Hoffman referenced them in his two reports. [DN 20 at 16 (citing AR at 81–82).] The DOL further argues that "[t]he same argument is regurgitated without support in Stone's opening brief." [DN 20 at 16.] According to the DOL, "[t]he only evidence in this case is that DOL properly provided all available medical records to an independent medical consultant for review." The Court disagrees, for the reasons discussed in detail above. To the contrary, there is nothing in Dr. Hoffman's supplemental report to suggest that he ever reviewed the dispensary records in question.

True, the arbitrary and capricious standard is "deferential" and is "the least demanding review of an administrative action." *Freeman*, 653 F. App'x at 409 (6th Cir. 2016). However, it is not a toothless standard. An agency's decision is considered to be arbitrary and capricious if the agency

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Ky. Waterways All*, 540 F.3d at 474 (quoting *Nat'l Ass'n of Home Builders,* 551 U.S. at 127). Here, by erroneously concluding that Dr. Hoffman *did* review the dispensary records at issue here, which document various respiratory issues prior to 1993, and by then relying on Dr. Hoffman's conclusion that Stone's medical records did not support a finding of a clinical course consistent with a chronic respiratory disorder, the FAB acted arbitrarily and capriciously. Specifically, it "failed to consider an important aspect of the problem" and "offered an explanation for its decision that runs counter to the evidence before the agency." *Id.* In other words, it failed to ensure that its CMC considered all of the available pre-1993 medical records.

The DOL argues, and the Court agrees, that for purposes of EECICPA claims, "[m]edical opinions from a CMC are essential to the resolution of claims due to ambiguous causation, lack of medical evidence, unique exposures or other medical questions." [DN 20 at 19 (quoting Federal (EEOICPA) Procedure Manual, Chapter 2-800.9 (2013), https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/ unifiedpm/Unifiedpm_part2/Chapter2-0800DevelopMedicalEvidence.htm).] Therefore, the fact that Dr. Hoffman, the CMC in this case, was not able to consider all of the available dispensary records before rendering his opinion that Stone could not demonstrate Criterion IV, a clinical course consistent with a chronic respiratory disorder, casts doubt on his opinion. And the FAB's

reliance on Dr. Hoffman's conclusion, after finding that Dr. Hoffman *did* consider those records, even after Stone's authorized representative pointed out at the hearing that Dr. Hoffman did not, was arbitrary and capricious. Accordingly, the Court finds that this matter must be remanded to the DOL to ensure that a CMC reviews all available medical records, including the many dispensary records that were omitted from Dr. Hoffman's review, before rendering an opinion as to Criterion IV.

To be clear, the Court expresses no opinion as to whether, on remand, a CMC should or will find that the omitted dispensary records on pages 530 to 540 of the Administrative Record constitute evidence of a clinical course consistent with a chronic respiratory disorder, as is required to satisfy Criterion IV. However, the Court finds that Stone is entitled to have a CMC review and consider that evidence, much of which references respiratory issues, in making that determination. This did not occur below.

### B. Stone's Claim for Part E Benefits

Lastly, with regard to Stone's claim under Part E, the DOL and Stone both agree that, "[w]hen adjudicating Part E claims, DOL must find that a DOE contractor employee has a covered illness under Part E if it has already determined that the employee is entitled to compensation under Part B for the same illness, including CBD." [DN 20 at 5 (citing 42 U.S.C. § 7385s-4(a)). In other words, if an employee is entitled to benefits under Part B, the employee is also entitled to benefits under Part E. Because the Court is remanding this matter to the DOL for further determinations regarding Stone's Part B claim, the outcome of Stone's Part E claim could likewise depend on those determinations. Therefore, the Court will set aside the DOL's denial of Stone's claim for benefits under both Part B and Part E of the EEOICPA and remand this matter back to the DOL for further proceedings consistent with this opinion.

CONCLUSION

For the reasons discussed in detail herein, the Court **SETS ASIDE** the DOL's decision denying Stone's claim for benefits under Part B and Part E of the EEOCIPA. This matter is **REMANDED** back to the DOL to conduct further proceedings in which it ensures that a CMC reviews all of Stone's medical records, including those found in the Administrative Record at pages 530 to 540, before determining whether Stone can demonstrate a clinical course consistent with a chronic respiratory disorder.

**IT IS SO ORDERED**.

Date:

cc:     Counsel